CITY OF CLEVELAND v. CLEVELAND, C., C. & ST. L. RY. CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   July 5, 1906.)

No. 1,451.

1. REMOVAL OF CAUSES—GROUNDS FOR REMOVAL—PREJUDICE AND LOCAL INFLUENCE.

The existence of prejudice and local influence does not furnish a separate and independent ground for the removal of a cause, but only operates to extend the time within which a case may be removed when the requisite diversity of citizenship exists.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, §§ 116-125.

Prejudice or local influence as ground for removal of cause to federal court, see note to Schwenk & Co. v. Strang, 8 C. C. A. 95.]

2. SAME—SEPARABLE CONTROVERSY—HOW DETERMINED.

The question whether a suit involves a separable controversy which renders it removable by one of two or more defendants must be determined from the pleadings as they stood when the petition for removal was filed.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, § 115.]

3. SAME—EJECTMENT—JOINDER OF LESSOR AND LESSEE AS DEFENDANTS.

A plaintiff in ejectment has the right to join a lessee in possession having a leasehold estate and an equity for improvements made and the lessor, so as to conclude both by one judgment; and, having such right,

one of the defendants so joined cannot make the controversy separable, nor remove the cause, where the other defendant and plaintiff are citizens of the same state.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

On motion for rehearing upon jurisdiction of the Circuit Court. For opinion below, see 93 Fed. 113.

Newton D. Baker, for plaintiff in error.

J. T. Dye and A. Squire, for defendants in error.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

LURTON, Circuit Judge. This was an action of ejectment started in the Ohio court of common pleas for the county of Cuyahoga. The plaintiff was a municipal corporation of the state of Ohio. The defendants were four distinct railroad corporations. Three of them were corporations of the state of Ohio, and the fourth, the Pennsylvania Company, a corporation of the state of Pennsylvania. After the cause was fully at issue, but before a trial upon the merits, the Pennsylvania Company removed the suit into the court below upon a petition which alleged that diversity of citizenship existed between it as a corporation of the state of Pennsylvania, and the sole plaintiff, a municipal corporation of the state of Ohio, and that from prejudice or local influence it would not be able to obtain justice in the court in which the suit was pending, or in any other state court to which it might under the laws of the state, have the right, on account of local prejudice or local influence, to remove said suit. The other three defendants did not join in this petition for removal and could not so do, being corporations of the state of Ohio and of like citizenship with plaintiff. After the removal, issue was taken upon the existence of the alleged prejudice or local influence, and a motion made to remand the case to the state court. Much evidence was heard upon this issue, and the motion to remand denied. Thereupon the cause came on regularly to be heard before the court and a jury, and there was a verdict and judgment for the defendants. From this judgment this writ of error was sued out, and error assigned.

In due course the cause was heard by this court, and an opinion handed down affirming the judgment of the court below upon grounds particularly set forth. No error was assigned upon the jurisdiction of the court, and our opinion did not deal with that question. Subsequently and at the same session, and before the time prescribed by rule for a petition for rehearing, this court, of its own motion, directed a rehearing upon the single question of the jurisdiction of the court below. The rehearing so ordered has been had with the result that we are constrained to recall our opinion and reverse the judgment with directions to remand the case to the state court from which it was removed. Diversity of citizenship did exist between the plaintiff and the removing defendant. But diversity of citizenship did not exist between the sole plaintiff and the other three defendants, and they

did not and could not join in the petition for removal. That the existence of prejudice and local influence does not furnish a separate and independent ground of removal, and only operates to extend the time within which a case may be removed when the requisite diversity of citizenship exists, is fully settled by Cochran v. Montgomery County, 199 U. S. 260, 26 Sup. Ct. 58, 50 L. Ed. 182.

The existence of a separable controversy within the meaning of section 2 of the act of August 13, 1888 (25 Stat. 433, c. 866 [U. S. Comp. St. 1901, p. 509]), between the plaintiff and the Pennsylvania Company which could be fully determined as between them without the presence of either of the local defendants was not alleged as a ground of removal in the petition, nor was the removal sought to be sustained in the court below upon that ground. Under section 5 of the act of 1888 (25 Stat. 436 [U. S. Comp. St. 1901, p. 511]) it is made the duty of the Circuit Court, as well as of this court, at any time that it shall appear that a suit removed from a state court does "not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court," to remand it to the court from whence it was removed. But it is urged with much earnestness that the court should not exercise this power, at this stage of the case, if the record discloses a removable case upon the ground of a separable controversy between the city of Cleveland and the Pennsylvania Company which would have afforded a sufficient ground for the removal if it had been relied upon and stated as a ground in the petition for removal. To restate the contention, it is that at this stage of the case, and in the absence of any objection to the jurisdiction by either party, a case is none the less one really and substantially involving a dispute or controversy properly within the jurisdiction of the Circuit Court, if, at the time of removal, there in fact existed a separable controversy between the sole plaintiff and the removing defendant, whether that reason was assigned in the petition for removal or not. For this counsel cite Ruckman v. Ruckman (C. C.) 1 Fed. 587, 591, Merchants, etc., Bank v. Thompson (C. C.) 4 Fed. 876, 878, and Connell v. Smiley, 156 U. S. 334, 15 Sup. Ct. 353, 39 L. Ed. 443.

We are not disposed either to admit or controvert this position, for we are unable to agree with learned counsel that there was a separable controversy, within the meaning of the removal act, disclosed by the pleadings in this case. The contention that there was a separable controversy is based upon the claim that the pleadings show that the premises in suit were not in the joint possession of the four railway corporations made defendants, but that the Pennsylvania Company was in possession of a distinct and separable part of the property sued for, as lessee of its codefendant, the Cleveland & Pittsburgh Company and that each of the other defendants claim and occupy a distinct and separate part of the premises. The pleadings do not bear out this contention. The premises sued for are described in the plaintiff's declaration as a single parcel of land, being a part of one of the public streets of said city, known in the original plat of the village as "Bath Street," and that "the defendants unlawfully keep said plain-

tiffs out of the possession thereof, whereby it is unable to perform the duty imposed upon it by law, to keep the same open and in repair and free from nuisance." Each of the defendant corporations answer separately. Thus, the Cleveland & Pittsburgh Railroad Company, a corporation of Ohio, after pleading the general issue, by way of second defense, says that it "and those under whom it holds have been in the continuous, uninterrupted and adverse possession of the premises described in the plaintiff's petition, under the claim of right and ownership, for more than 21 years last past before the commencement of this action." The original answer of each of the other three defendants was in identical terms.

Each of the defendants subsequently amended their separate answers by setting out the source of title under which they claim the premises. Among these sources of title was an ordinance of the city of Cleveland of September 15, 1849, by which in consideration of $15,000 the said city granted the said premises to the defendant the Cleveland, Columbus & Cincinnati Railroad. That ordinance is not set out in hæc verba in this amendment, but it is said in the amendment to the answer of the Cleveland & Pittsburgh Railroad Company in respect of it that the city thereby conveyed "all such right, title, or interest it had or claimed to have in the premises sought to be recovered in this action, subject to the rights which the defendant company and its grantors had therein." The granting clause of the ordinance was as follows:

"Hath granted and by these presents doth grant to said railroad company, as fully and absolutely as said city or the constituted authorities thereof have the power or legal authority so to do, the right to the full and perpetual occupancy for their railroad tracks, turnout, engine and car and passenger house, turntable, water tanks or stations, avenues to and from the same, leaving open spaces between when deemed expedient and other purposes connected with and necessary for the convenient use and working of said road."

The qualification of the grant to the Cleveland, Columbus & Cincinnati Railroad Company referred to in the answer of the Cleveland & Pittsburgh Railroad Company as contained in the ordinance of 1848, was in these words:

"Said company to take and hold said land subject to all the legal rights and claims of the Cleveland & Pittsburgh Railroad Company upon the same, and to have all the benefits to accrue from such claimants as is before provided, and as a further provision for the same, shall upon reasonable and equitable terms, extend to said Cleveland & Pittsburgh Railroad Company and the Cleveland, Painesville & Ashtabula Railroad Company, room for warehouse and passenger depots, and such facilities for coming onto said premises with their cars, engines and tenders for the reception and delivery of passengers, baggage and freight, subject to the same restrictions as to warehousing, forwarding and commission business as are herein imposed on the Cleveland, Columbus & Cincinnati Railroad Company, and for transferring them to or receiving them from other railroads, or from steamboats, either by independent tracks, or by the use of the tracks laid by the Cleveland, Columbus & Cincinnati Railroad Company, as shall be found most convenient to all concerned, and in case the parties cannot agree as to the terms or manner of occupying such part of the premises as may be so required, the same shall be determined by three competent, disinterested men, one to be chosen by each party and the third by the two so chosen. It being, however, under-

stood that the Cleveland, Columbus & Cincinnati Railroad Company shall not be bound to permit either of said railroad companies to use for car, engine or warehouses, or grounds on which to place or dispose of cars, engines, tenders or other furniture of their roads, any part of said premises which said arbitrators shall decide is necessary for those purposes to be used exclusively by said Cleveland, Columbus & Cincinnati Railroad Company. It being further understood and agreed that no part of said premises shall after two years from this date be used by said Cleveland, Columbus & Cincinnati Railroad Company, for forges, furnaces, workshops or anything of a similar character for the manufacture of cars, engines or other machinery, so as to deprive either of said railroad companies of the full benefit of the use of part of said premises intended by this agreement to be extended to them."

The amended answer of the Pennsylvania Company set out that "it is in possession of and holds title to the premises in the petition described as lessee of the defendant, the Cleveland & Pittsburgh Railroad Company, and that it is so in possession by virtue of the title of the Cleveland & Pittsburgh Company, transferred to it under said lease." It thereupon sets out the same defense and same line of title set out in the answer of the Cleveland & Pittsburgh Company. Still later each of the defendants by an amendment to their answers disclaimed title to or possession of a strip 132 feet wide specifically described and being a part of the premises described in the plaintiff's declaration, but there was no disclaimer to any other part of the premises. The pleadings do not show the division of the premises between the several railway corporations' now occupying same. Being independent railways operating independent lines of railroad it is probable, as suggested by counsel, that each may exclusively occupy certain of the numerous tracks constituting the terminals of the defendant companies. But it is also quite probable that some of the facilities incident to such terminal property, such as stations, docks, sheds, and particularly the spaces left open for access from the streets of the city to the various tracks, are subject to joint use and have been in the joint occupation of the several defendants.

It would be a matter of pure conjecture to say how this is, for the question as to whether this was a separable controversy when the removal occurred must be made out from the controversy as then presented by the pleadings. If each had then claimed and occupied only a distinct part of the premises, it should so appear from the pleadings, and a disclaimer should have been made as to the part not claimed or occupied by each defendant. This does not appear. As we have already shown, the only disclaimer was one made by each defendant of a strip constituting an open street included within the outside lines describing the premises sued for. As to all the rest each defendant separately pleaded a continuous adverse possession for more than 21 years, and if there was any qualification of this in the amended answers it is not in such terms as to enable us to say that the suit is one for the recovery of several distinct parcels of land each owned or claimed or occupied by only one of the several defendants. The case does not, therefore, fall within the principle of U. P. Ry. v. Kansas, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319, and Connell v. Smiley, 156 U. S. 335, 15 Sup. Ct. 353, 39 L. Ed. 443. The case is rather

controlled by the general principles deducible from such cases as Bellaire v. B. & O. R. Co., 146 U. S. 117, 13 Sup. Ct. 16, 36 L. Ed. 910, and Corbin v. Van Brunt, 105 U. S. 576, 26 L. Ed. 1176.

But there is another insurmountable objection to a removal upon the ground of a separable controversy between the plaintiff and the Pennsylvania Company, even if the suit against that company involves only a distinct and separate part of the premises claimed by the city. The supposed separable parcel so occupied by the Pennsylvania Company is the property of the Cleveland & Pittsburgh Company, a corporation of Ohio. The Pennsylvania Company pleads that it is in possession as lessee under the Cleveland & Pittsburgh Company. It further pleads that as lessee, and in reliance upon the city ordinance of 1848, before referred to, and the long acquiescence of the city, it had in good faith expended a great sum of money in the improvement of its leasehold. It thus has a substantial interest in defending against the city growing out of the value of its lease and its equity in the matter of improvement. That the city might have sued the Pennsylvania Company as lessee in possession without joining the Cleveland & Pittsburgh Company, as lessor, may be' conceded. In that event the right of removal would be clear for the requisite diversity of citizenship would have existed. After the removal the Cleveland & Pittsburgh Company, as the lessor, might have come in and been made a defendant in its own interest, for the purpose of defending its interest and estate as a lessor. But if this had been done after a removal by the lessee it would not have ousted a jurisdiction already acquired. This would be due to the ancillary character of the suit as against the owner or lessor. It would be an intervention pro interesse suo, and on well settled principles would not defeat the original jurisdiction. This is well settled in respect to just such a supposed case in Phelps v. Oak, 117 U. S. 236, 241, 6 Sup. Ct. 714, 29 L. Ed. 888. But Phelps v. Oak is not an authority justifying a removal by a lessee when the lessor is also a party and does not join in the application for a removal.

The plaintiff had a right to join a lessee in possession having a leasehold estate and an equity for bona fide improvements, with the lessor holding the major estate, and thus conclude both in one suit and by one judgment. Having the right to join both in one action, it is not for a defendant to say that the single matter of controversy shall be the subject of two suits. Having elected to join both the owner and the lessee in one suit, the defendants cannot make severable that which the plaintiff had a right to make joint. L. & N. R. Co. v. Ide, 114 U. S. 52, 5 Sup. Ct. 735, 29 L. Ed. 63; Little v. Giles, 118 U. S. 596, 7 Sup. Ct. 32, 30 L. Ed. 269.

We are constrained to hold that the Circuit Court was without jurisdiction. The judgment, for this reason only, must be reversed, with directions to remand to the state court from which the suit was wrongfully removed. The costs of this court and of the Circuit Court will be paid by the Pennsylvania Company.